**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOISTING AND PORTABLE ENGINEERS, LOCAL NO. 4 AND ITS BRANCHES OF the INTERNATIONAL UNION OF OPERATING ENGINEERS, Respondent.**

No. 71–1333.

United States Court of Appeals, First Circuit.

Heard Feb. 23, 1972.

Decided March 9, 1972.

Allison W. Brown, Jr., Atty., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Madge F. Jefferson, Atty., Washington, D. C., were on brief, for petitioner.

Arthur J. Flamm, Boston, Mass., with whom Flamm, Mason & Paven, Boston, Mass., was on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The National Labor Relations Board seeks enforcement of an order against respondent union * for violating section 8(b) (1) (A) of the Act, 29 U.S.C. § 158(b) (1) (A), by refusing to refer through its hiring hall one of its members, Messenger, for employment because of animus occasioned by Messenger's protected intra-union political activities.

The union says at the outset that, not having an exclusive hiring hall,

---

* Hoisting and Portable Engineers, Local No. 4, and its branches of the International Union of Operating Engineers.

it could refuse to refer a particular person for any reason, good or bad, or for no reason. The Board ruled otherwise, saying that the union could not refuse to refer as retribution for protected conduct. We consider the Board's ruling well within its rights. Although a union may have no obligation to seek jobs for its members, neither is an employer, in the absence of a contract, obliged to retain an employee it chose to hire at will. An employer may not, however, discriminate on account of protected activities. We see no reason why this restriction should not be imposed on a union as well.

On the merits, the union seeks to turn the case into one where there are two possible reasons, one good and one bad, for a respondent's conduct, and to claim that the Board had no basis for choosing one over the other. There have been occasions where we have charged the Board with such failure, but the union's assertion that this is such a situation is so improper (a fact we are constrained to say we discovered only by reading the record unassisted) that we will deal with the case only briefly.

 In January 1969 union member Messenger was eligible for a referral but the union representative, DeRosa, not only did not recommend him, but was found to have said he would "never give that bastard a job." For eleven years Messenger had been fighting union management, including filing unfair practice charges, and sometimes even alleging fraud. Affirming the trial examiner, the Board found that all of this was protected activity, which is not questioned, and concluded that it was the cause of his blacklisting. To this the union objects.

It is true that until this particular occasion the union had effected no reprisals. On the contrary, it has recommended Messenger for jobs, and had backed him when employers complained about him. Although recognizing that this history cast doubt upon a finding that the union was affected by animus because of Messenger's anti-management

conduct, the Board did not find it conclusive. We agree. The time might finally have come when the union felt enough was enough. At the same time we also agree that the conflicting history made it appropriate to consider whether there was some other reason. The union, in its brief, says that there was one.

"One of the criteria utilized by Union representatives in making referrals is competence. Messenger had previously been discharged by his employer for incompetence and DeRosa had obtained his reinstatement. He was subsequently rejected by the employer as incompetent after being referred to the job by DeRosa and was also discharged by another contractor for incompetence. . . . *This background could have caused DeRosa to reject emphatically the thought of referring Messenger for employment.* The Examiner did not even consider this explanation although it is much more consistent with all of the circumstances than the inference of discrimination because of intra-union activities." (Emphasis supplied.)

We note, in passing, that the last-mentioned discharge occurred one month after the event in question, and was scarcely an explanation for it. But there was a far better reason why the examiner did not consider what he is now criticized for overlooking. DeRosa's position at the trial was that he did not refer Messenger because another member had already visited the job site and had preference. Q. "In response to a question by Mr. Flamm you said if Mr. Mara had not been out to the job you would have considered Mr. Messenger?" A. "Positively." Q. "By consider does that mean that you would have sent him or just thought about sending him?" A. "I would have sent." Q. "You definitely would have sent him?" A. "Positively, that is right."

The court does not care for put-ons.

The Board's order will be enforced.